Mr. Hillis, may it please the court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office for the Central District of Illinois, and I represent Robert Falor. Of the three issues he raises, two concern the imposition of supervised release, and in light of this court's decision in Thompson in the government's position paper, I will not address those issues unless the court has questions of me. Do you think there's any change affected by our decision last week in CAPPUS? Not effectively for the relief that's required in this case, Your Honor. I have in 28 Jade CAPPUS, but I believe that under Thompson or under CAPPUS, a remand would be required. I think some of the conditions might be tightened up in light of the language of CAPPUS, but no, I don't think there's anything I'd need to especially address. If there are then no questions on those issues, I'd proceed to issue one. As for that issue, the district court erred by inadequately considering Mr. Falor's cooperation, which is a valid mitigating argument. Mr. Falor cooperated extensively. He proffered five to ten times. He was a government witness for trial, although the trial didn't come to pass. He flew twice to Atlanta to participate in those proceedings, and he also identified a target for the government to investigate, which, although this is outside the record, I understand there's been an additional indictment in relation to that. The government, though, recommended what we consider a less than generous 15% reduction based on that cooperation, and it did so for two reasons. It referred to Giglio issues and the lack of a written plea agreement. The district court accepted the government's reasoning as to Giglio, but no Giglio issue prevented the government from harvesting and reaping the benefit of Mr. Falor's cooperation. So that wasn't a valid basis to diminish or discredit the amount of cooperation that was given or that should have been valued in this case. The lack of consideration of these issues procedurally didn't address them. When we talk about lack of consideration, we're talking about district courts who don't acknowledge or respond to some issue. But the judge responded to this issue. Otherwise, your client wouldn't have gotten the discount he got. The disagreement here seems to be whether he's entitled to more than 15%. That's in part. Well, so I ask my question. What makes the sentence unreasonable? That's a pretty lax standard. Yes, the district court must respond adequately and state its reasons with sufficient justification in regard to the reasons offered by the government for something only 15%. The district court didn't address the second issue, which was the lack of written plea agreement. And of course, if none was offered, as there wasn't here, you can't really rely on that as a basis to discredit the value of the cooperation. And again, the Giglio issue didn't prevent the government from getting the value of the cooperation. So we believe the district court did not adequately. Was there a proffer? Yes, five to 10 of them. And they refused? I beg your pardon? The government refused the proffer? No, the government accepted the proffer. Oh. It only gave 15% reduction. Wasn't that a plea agreement? There was not a plea agreement. No, there was open plea. What defines a plea agreement? What is lacking? Well, there's no written plea agreement. Oh, we didn't say written plea agreement, did we? Yes, sir. No written plea agreement. You don't have to have written to be a plea agreement, do you? I believe so. I don't know. It's currently what they do. But there's no reason under Sanibel or any other case that requires somebody to sit down and write a plea agreement. Yes, and you could have an oral agreement. It would be best to put the terms in writing. Both defense counsel and the prosecution agreed that there was an agreement. The defendant said he would tell this. The government said they'd accept it. They'd make a recommendation. That's a plea agreement, isn't it? Yes, but I believe that those were the things that were specified in the cooperation agreement, which is a separate document. What's a cooperation agreement? It would be different to the cooperation agreement than a plea agreement. The cooperation agreement is limited just to the cooperation and is a quid pro quo. You give the information, the government is honor bound. All right, go ahead. Ultimately, this case is going to be remanded, I hope, in light of the Thompson error and in light of Kappus. So these are things that can be more fully plowed in the district court, and I hope instead of Rule 35B posture for a sentence reduction, we can now seek something larger than the 15 percent reduction based on any additional indictments that come. And I believe that there is, for the reasons I've stated, reason to be concerned about the lack of explanation by the district court for essentially what we see is a rubber stamping of the government's reasons, and neither of which were particularly valid in our opinion to give only a 15 percent reduction, given the extensive cooperation in this case. Unless the court has questions of me, I have nothing further. I reserve the balance of my time for rebuttal. We ask for a remand. Thank you. Certainly. Mr. Hillis? May I please the court? Counsel, good morning. Your Honor, the district court did provide an adequate explanation of its analysis with respect to the reduction. Was there agreement between the government and the defendant? Well, it's my understanding that there was not a written agreement. Not what? Pardon me? Not any agreement? Well, I would expect that there would have been a proper agreement that would have allowed the defendant to provide information Did the defendant offer anything to the government that the government accepted and in response was going to ask for a difference, a lesser settlement? The defendant offered information, and the government accepted that information and agreed to seek a reduction. Is there a plea agreement? Did we give him a plea agreement? Was that the question? No. The question is the definition of the relationship between the defendant and the government as to the sentence. And I'm asking whether or not, how you would characterize the agreement you just said there was. I think what the parties are saying here is that there was no plea agreement that specified, one, the specific nature of the defendant's cooperation, what he would commit to do. But he did say he would give you information, and you said in response to that you would recommend a reduction. Correct. And there was no plea. Another thing that a plea agreement What would you call that? You could call that a plea agreement. That's what I thought we'd get to. I think what the parties are saying is that there was not what is normally done in this jurisdiction, which is a plea agreement that specifies particular cooperation and a particular response. Everything was not written out in a plea agreement that you see in a lot of plea agreements. But there was some agreement that had to do with his giving you information and you recommending a different sentence, which by its nature is a plea agreement. We agree. Okay. And the government complied with that, with the agreement that existed. There you are. It's on you. The district court, on page 76 of the sentencing transcript, explained its reasons for accepting the government's characterization of the value of the defendant's cooperation and accepting the government's analysis that a 15% reduction was appropriate. The court said that in its view, the government was in the best position to assess the value of the cooperation and that the defendant's record of prevaricating and fraud reduced the value of the defendant's cooperation, as the government had argued. The district court's explanation was clearly sufficient, and it was plainly enough to satisfy this court that the court considered the arguments made by both sides and had a reasoned basis for making the determination it made. If the court has no further questions of me, we would simply ask that this court remand the case. Before you sit down, I do have a question on the scope of the remand. We were together last week, and a different argument was being made on the scope of a Thompson remand. Thompson contains very broad language about unwinding the entire sentence because the conditions of supervised release have an effect on the duration of the prison term. When we were all together last week, you were arguing that that should be modified, and I didn't see that in your position statement. So I assume you're taking the same position here? Well, Your Honor, based on Thompson, that's what Thompson said. And so based on Thompson, we took the position that a full remand was required. Subsequently, this court issued its decision in Sewell, and in that case the court didn't go that far. Based on the court's decision in Sewell, the government stated in the argument last week and would repeat here that it's the government's view that it is not always necessary to remand for a full resentencing merely to address conditions of supervised release. The government's position has not changed with respect to that. However, the court decided the cap changed very recently, and now that case was a little different because in that case notice had been provided to the defendants of the specific conditions of supervised release that were in play. That wasn't true here. I'm not getting at this as a standard of review question about whether we're in plenary land or plenary review, but what the nature of the remand ought to be. In our view, the nature of remand here should be limited to the conditions of supervised release. However, I think the government's position on this case generally is that actually clarity might be the most valuable. We need a rule. That might be the most valuable thing. So whatever you decide, that's what we'll go with. But we do think that there really is not a valid basis in every single case to completely unwind the sentence and require the district court to basically reevaluate all the decisions that were made before. In a case such as the one in Thompson where arguments were made to the district court that specifically connected the conditions of supervised release to the length of the term of imprisonment, in those cases we absolutely think that full remand is completely appropriate and would support it in that kind of context. But those cases are, from what we've seen so far, those cases don't seem to be the rule. They seem to be the exception. So the court would make that point, or the government would make that point. So with that in mind, the government respectfully requests that this court remand for purposes of reconsidering the conditions of supervised release and affirm the judgment in all other respects. Thank you, Counsel. Anything further? Mr. Hillis? Yes, please, Your Honor. When we were together the last time, the issue did come up about Thompson and then the intervening opinion in Sewell, and now we have Kappas. The rule is in Thompson. That was stare decisis. Sewell was a departure from that rule. Kappas has since been decided. And so if we look at the considerations, was there a valid policy reason or something to depart from Sewell, Kappas has reaffirmed what the scope of the remand is. We don't have any Supreme Court authority. We don't have any change in the statute. We don't have anything that would suggest, or an en banc decision, that the rule in Thompson still isn't the rule. Moreover, the greater recency of Kappas would further detract from any appeal of Sewell for a limited remand for just the supervised release conditions. And also, Thompson had four cases. One of those cases had a sentence that was affected by the length and conditions of supervised release much more than the other three did, yet the remedy was the same in all three cases based on the violation or the invalid imposition of supervised release. So that's a distinction that needs to be made. We cannot lump all of them together, but we can come up with the same rule, and that was what Thompson stated, full resentencings, full remands, and that's what Kappas stated. Sewell is an outlier in that respect, so we think that the appropriate remedy is remand for full resentencing. Thank you. Thank you, counsel. Our final argument of the day is united.